# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ORIGIN HOLDINGS, INC., | Case No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| PAMELA GLANVILL, | |
| Defendant. | |

## COMPLAINT

Plaintiff ORIGIN HOLDINGS, INC. ("Origin"), as and for its Complaint against Defendant Pam Glanvill ("Glanvill"), states as follows:

## NATURE OF THE ACTION

1. This case arises out of Defendant Pamela Glanvill's breach of her agreement to repay a personal loan to her former employer, Origin Holdings, Inc., a private equity firm based out of Las Vegas, Nevada.

2. Glanvill was hired to fill the position of President for Origin Consulting, LLC, a wholly-owned subsidiary of Origin Holdings, Inc., beginning in March 2012. Origin Consulting provides professional consulting services to the Energy and Utilities Industry related to the implementation and continued support of business applications essential to a company's day-to-day business operations, to improve reliability, service, and safety for utility companies worldwide.

3. After approximately 18 months of employment with Origin, Glanvill chose to relocate her family from St. Louis to the Chicago area and sought a personal loan from Origin to allow her to finance the purchase of a new home.

4. Origin agreed to loan Glanvill money to facilitate her purchase of a new home as a "personal advance," contingent on the agreement that she would repay the loan over five quarters, from 2013 through the end of 2014. Ultimately, Origin loaned Glanvill $134,348.50 which she promised to repay be the end of 2014.

5. Glanvill only repaid a portion of the loan, $58,540.80, by June 2016, and terminated her employment with Origin in November 2016. Since that time, Glanvill has reneged on her obligations to Origin and refused to repay the balance of the loan.

6. As described below, Origin has suffered damages in excess of $75,000 as a result of Glanvill's breach and self-serving conduct wherein she refuses to pay back money she was loaned and is not entitled to keep.

7. Accordingly, Origin brings this action to prevent further harm and recover damages it has suffered as a result of Glanvill's unlawful conduct against it and seeks damages pursuant to a breach of contract claim, and in the alternative, a claim for unjust enrichment.

## PARTIES

8. Plaintiff Origin Holdings, Inc., is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in Las Vegas, Nevada.

9. Defendant Pam Glanvill is an individual who, upon information and belief, is a citizen of the State of Illinois and domiciled at 14554 Morningside Road, Orland Park, Illinois. Glanvill was employed as President of Origin Consulting, LLC from March 5, 2012 through her voluntary resignation on November 11, 2016.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(1) and (2) because Plaintiff conducts business in this judicial district, Defendant resides in this District, and a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this judicial district.

12. This Court has personal jurisdiction over Defendant Pam Glanvill, and venue is proper in this District under 28 U.S.C. § 1391(a) because Defendant breached her contractual obligations and was unjustly enriched in this State.

## EVENTS GIVING RISE TO THIS ACTION

13. On January 17, 2012, Mark Black ("Black"), the President and Chief Executive Officer ("CEO") of Origin, extended an offer of employment to Glanvill, where she would hold the position of President of Origin Consulting, LLC. Her official start date would be March 5, 2012. A copy of her Offer Letter is attached as Exhibit A.

14. Glanvill signed and accepted the terms of employment. Pursuant to the Offer Letter, Glanvill would receive an annual salary of $165,000, paid to her on a bi-weekly basis. Exhibit A.

15. For the first year of her employment, Glanvill was guaranteed a $10,000 quarterly bonus, paid to her at the beginning of the following quarter. Thereafter, for the following year, she would negotiate a performance-based bonus plan with Black.

16. In addition, to be eligible for a bonus payment upon separation of her employment, Glanvill understood and agreed that she had to be employed through the end of the

quarter for which her bonus was being considered and remain actively employed on the date of bonus payout. *See* Exhibit A.

17. In or around November 2013, Glanvill decided to relocate her family from St. Louis, Missouri, to Chicago, Illinois. To that end, Glanvill sought a cash advance loan from Origin to assist in the down payment on a new home.

18. On or around November 3, 2013, Black agreed to loan and advance the money to Glanvill. Black communicated the arrangement for the cash advance, stating he "offered to advance [Glanvill] her bonus for several quarters to assist in the cash required up front," needed for her to purchase a new home, with Mike Roddie ("Roddie"), the Chief Operations Officer of Origin, and Stacey Carver ("Carver"), the Director of Human Resources and Operations, to help coordinate the effort. A copy of the e-mail correspondence is attached as Exhibit B.

19. On November 12, 2013, Glanvill communicated with both Carver and Roddie regarding the specific amount needed—$90,000—and the necessary documentation she could provide to the bank advising the money was placed in her account. The subject of the email communications with Carver and Roddie was "Cash Advance". Exhibit B.

20. Concerned about taxes on the amount of the loan, Glanvill asked Carver to increase the original loan amount of $90,000, to $93,000, so she could "clear the $90k at least" after taxes. *See* Exhibit B.

21. Due to the nature of the large cash infusion into her personal accounts and a pending mortgage loan, Glanvill and Origin agreed that the loan would be referred to as an "advance" against her upcoming bonus payouts. At all relevant times, Glanvill understood and agreed that the $93,000.00 was a personal loan that she would have to pay back to Origin.

22. Upon information and belief, sometime in late 2013, Glanvill and her husband Peter purchased the rights to run a Chick-fil-A franchise, located at 9600 Ridgeland Avenue, in Chicago Ridge, Illinois. 60415. Upon information and belief, to become an owner and "Operator" of a Chick-fil-A franchise, requires an initial cash investment of approximately $130,000.00.

23. On December 2, 2013, Origin wired the $93,000.00 loan into Glanvill's personal account so that she could use it for a down payment for purchase of a new home.

24. On February 6, 2014, Black emailed Glanvill a chart summarizing her 2013 executive payout and compensation, with projections for a $73,000.00 bonus in 2014. At the end of the chart, was a line item for the "Personal Advance" in the amount of $93,000.00. *See* Exhibit C.

25. On that same day, Glanvill responded to Black stating, "I feel extremely blessed to be working for someone like you. You are extremely generous, supportive, and just a great boss." *See* Exhibit C.

26. On February 7, 2014, Black requested that Glanvill "decide the initial payback scheme for the advance…knowing that it can be adjusted if need be." *See* Exhibit C.

27. Four days later, Glanvill asked Black if it would be acceptable for her to pay back the loan amount of $93,000.00 over five (5) quarters, the first payment in 2013 and then the remainder in 2014. Black agreed to this proposed plan and confirmed that Glanvill would receive a Q4 2013 bonus for $53,000, instead of $73,000, as part of the repayment plan. Glanvill agreed. *See* Exhibit C.

37998846v.1

28. By March 17, 2014, Glanvill corresponded with Roddie and Carver regarding her 2013 W-2 and stated that the "$92k (sic) was a loan and should not have been recorded as income," and accordingly, an adjustment needed to be made to her W-2. *See* Exhibit D.

29. The $93,000.00 personal advance was recorded as income and as a result, Glanvill owed taxes on the loan amount. As a solution, Black again offered to advance Glanvill an additional $40,000.00 to pay the taxes on the loan. Origin had contributed $1,348.50 as a result of the loan, making the total loan $94,348.50. *See* Exhibit E.

30. On April 11, 2014, Origin wired an additional $40,000.00 into Glanvill's personal account to pay for the taxes owed on the original loan amount.

31. Accordingly, as of May 1, 2014, the total debt Glanvill owed to Origin was $134,348.50.

32. Glanvill made varying payments on the loan to Origin between May 2014 and June 2016, and neglected to adhere to her original plan to pay over five quarters, ending in 2014. The total amount that Glanvill repaid to Origin was $58,540.80. *See* Payment Schedule, Exhibit E.

33. On or around November 3, 2016, Glanvill resigned from Origin Consulting, LLC, effective November 11, 2016.

34. Black summarized the terms of Glanvill's termination, including "Payment of Outstanding Company Loan," for which he demanded payment in full. *See* Letter, Exhibit F.

35. As of November 11, 2016, Glanvill owed a balance of $75,807.70 to Origin.

36. On November 21, 2016, counsel for Origin sent a demand letter to Glanvill demanding repayment of the original loan.

6
37998846v.1

37. As of the date of the filing of this Complaint, Glanvill has refused to repay the balance of the amount owed on the loan.

38. On or around December 3, 2016, Glanvill began employment with TMG Consulting as Executive Vice President, to lead the firm's client-side delivery support practice, CSDSupport™.

## COUNT I - BREACH OF CONTRACT

39. Origin restates and realleges Paragraphs 1 through 38 as though fully set forth herein.

40. The agreement between Origin and Glanvill, for Glanvill to repay the personal cash advances made to her in the amounts of $93,000.00 and $40,000.00, is a valid and enforceable contract.

41. Origin fully performed its obligations under the agreement with Glanvill.

42. Glanvill's partial repayment of $58,540.80 of the total loan demonstrates that, at all times, she knew and understood the personal cash advance was a loan requiring her repayment.

43. Upon termination of her employment with Origin in November 2016, Glanvill failed and refused to repay the remaining balance of the loan in the amount of $75,807.70 to Origin.

44. Glanvill's failure and refusal to repay the balance of her loan to Origin is a material breach of her agreement with Origin.

45. As a result of Glanvill's breach of her agreement, Origin has been injured.

WHEREFORE, Origin Holdings, Inc., respectfully requests the entry of judgment in its favor and against Defendant Pamela Glanvill in an amount to be determined at trial, including, but not limited to, the amount of $75,807.70, plus prejudgment interest in an amount of 5% per

annum as afforded by law, and any other applicable interests, costs and fees, and for such other relief this Court deems appropriate and just.

## COUNT II - UNJUST ENRICHMENT
### (In the Alternative)

46. Origin restates and realleges and incorporates by reference Paragraphs 1-38, as though fully set forth herein.

47. In the alternative to Count I, even if there is no enforceable contractual obligation by Glanvill to repay the balance of her personal loan to Origin, Origin is entitled to recover the money from Glanvill under the equitable doctrine of unjust enrichment.

48. Glanvill received a benefit from Origin, specifically in the form of a personal loan amount in excess of $134,000, for which she owes Origin a balance of $75,807.70.

49. Origin's payment and Glanvill's refusal to reimburse Origin for the balance of $75,807.70, has been to the detriment of Origin.

50. Glanvill has been unjustly enriched in the amount of at least $75,807.70, by virtue of her failure to repay the balance of her personal loan because she did not earn the money. Such retention of the balance of the loan, without repayment, violates fundamental principles of justice, equity, and good conscience.

WHEREFORE, Origin Holdings, Inc., respectfully requests the entry of judgment in its favor and against Defendant Pamela Glanvill in an amount to be determined at trial, including, but not limited to, the amount of $75,807.70, plus all applicable interests, costs and fees, and for such other relief this Court deems appropriate and just.

**DATED: March 15, 2017**

                          Respectfully submitted,

                          **ORIGIN HOLDINGS, INC.**

                          By:    s/Robin E. Marsh
                                    One of its Attorneys

Noah A. Finkel
nfinkel@seyfarth.com
Robyn E. Marsh
rmarsh@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
(312) 460-5000