# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Origin Holdings, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17-cv-02031 |
| | ) | |
| v. | ) | District Judge Thomas M. Durkin |
| | ) | |
| Pamela Glanvill, | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendant. | ) | |

## Notice of E-Filing

To: Noah Finkel
   Robyn Marsh
   Seyfarth Shaw, LLP
   233 S. Wacker, Suite 8000
   Chicago, IL 60606

PLEASE TAKE NOTICE that on **August 18, 2017**, the undersigned caused the attached **Defendant's Answer to First Amended Complaint and Affirmative Defenses** to be electronically filed via the Clerk of the Court using CM/ECF system.

Respectfully submitted,
/s/Stephanie Simpson
Jefferey O. Katz
Michael Haeberle
Stephanie Simpson
Patterson Law Firm, LLC
One North LaSalle St., Suite 2100
Chicago, IL 60602
jkatz@pattersonlawfirm.com
mhaeberle@pattersonlawfirm.com
ssimpson-mathless@pattersonlawfirm.com
Tel. 312-223-1699
Fax. 312-223-8549
Firm I.D.: 45052
Attorneys for Defendant

**Proof of Service**

The undersigned, an attorney, certifies that on August 18, 2017, a copy of the **Defendant's Answer to First Amended Complaint and Affirmative Defenses** was filed electronically with the Clerk of the Court using CM/ECF system. The parties may access this filing through the Court's electronic filing system, and notice of this filing will be send to the following parties by operation of the Court's electronic filing system.

Noah Finkel
Robyn Marsh
Seyfarth Shaw, LLP
233 S. Wacker, Suite 8000
Chicago, IL 60606

/s/ Stephanie Simpson
Stephanie Simpson

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Origin Holdings, Inc. and <br> Origin Consulting, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Pamela Glanvill, <br><br> Defendant. | ) <br> ) <br> ) <br> ) Case No. 1:17-cv-02031 <br> ) <br> ) Dist. Judge Thomas M. Durkin <br> ) <br> ) Magistrate Judge Susan E. Cox <br> ) <br> ) |

**Defendant's Answer to First Amended Complaint**

Defendant, Pamela Glanvill, by and through her attorneys, Patterson Law Firm, LLC, in answer to Plaintiffs' First Amended Complaint and states as follows:

**NATURE OF THE ACTION**

1. This case arises out of Defendant Pamela Glanvill's breach of her agreement to repay a personal loan to her former employer, Origin Consulting LLC, a wholly owned subsidiary of Origin Holdings, Inc., a private equity firm based out of Las Vegas, Nevada.

**Answer**: Glanvill admits that Origin Consulting, LLC was her former employer and is a wholly owned subsidiary of Origin of Origin Holdings, Inc., a private equity firm based out of Las Vegas, Nevada. Glanvill denies the remaining allegations in Paragraph 1, including any breach of an agreement.

2. Glanvill was hired to fill the position of President for Origin Consulting, LLC, a wholly-owned subsidiary of Origin Holdings, Inc., beginning in March 2012. Origin Consulting provides professional consulting services to the Energy and Utilities Industry related to the implementation and continued support of business applications essential to a company's day-today business operations, to improve reliability, service, and safety for utility companies worldwide.

1

**Answer**: Admitted.

3. After approximately 18 months of employment with Origin, Glanvill chose to relocate her family from St. Louis to the Chicago area and sought a personal loan from Origin to allow her to finance the purchase of a new home.

**Answer**: Defendant admits that she relocated from St. Louis to the Chicago area. Defendant denies the remaining allegations contained in Paragraph 3.

4. Origin agreed to loan Glanvill money to facilitate her purchase of a new home as a "personal advance," contingent on the agreement that she would repay the loan over five quarters, from 2013 through the end of 2014. Ultimately, Origin loaned Glanvill $134,348.50 which she promised to repay be the end of 2014.

**Answer**: Defendant admits that Origin Consulting, LLC agreed to advance her bonus to facilitate the purchase of her new home. Defendant denies the remaining allegations contained in Paragraph 4.

5. Glanvill only repaid a portion of the loan, $58,540.80, by June 2016, and terminated her employment with Origin in November 2016. Since that time, Glanvill has reneged on her obligations to Origin and refused to repay the balance of the loan.

**Answer**: Glanvill admits that she paid $58,540.80. Glanvill denies the remaining allegations in Paragraph 5.

6. As described below, Origin has suffered damages in excess of $75,000 as a result of Glanvill's breach and self-serving conduct wherein she refuses to pay back money she was loaned and is not entitled to keep.

**Answer**: Denied.

7. Accordingly, Origin brings this action to prevent further harm and recover damages it has suffered as a result of Glanvill's unlawful conduct against it and seeks damages pursuant to a breach of contract claim, and in the alternative, a claim for unjust enrichment.

**Answer**: Denied.

## PARTIES

8. Plaintiff Origin Holdings, Inc., is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in Las Vegas, Nevada.

**Answer**: Admitted.

9. Plaintiff Origin Consulting, LLC, is a wholly-owned subsidiary of Origin Holdings, Inc., and organized with the State of Nevada as a series limited liability company. Origin Consulting, LLC is comprised of two members, Mark L. Black and Tamara Wilson- Black, both of whom are exclusive residents of Las Vegas, Nevada.

**Answer**: Admitted.

10. Defendant Pam Glanvill is an individual who, upon information and belief, is a citizen of the State of Illinois and domiciled at 14554 Morningside Road, Orland Park, Illinois. Glanvill was employed as President of Origin Consulting, LLC from March 5, 2012 through her voluntary resignation on November 11, 2016.

**Answer**: Admitted.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

**Answer**: Admitted.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(1) and (2) because Plaintiff conducts business in this judicial district, Defendant resides in this District, and a substantial part of the events and omissions giving rise to the claims asserted herein occurred in this judicial district.

**Answer**: Admitted.

13. This Court has personal jurisdiction over Defendant Pam Glanvill, and venue is proper in this District under 28 U.S.C. § 1391(a) because Defendant breached her contractual obligations and was unjustly enriched in this State.

**Answer**: Defendant admits this Court has personal jurisdiction over her Defendant denies that she breached her contractual obligations and the remaining allegations in Paragraph 13.

### EVENTS GIVING RISE TO THIS ACTION

14. On January 17, 2012, Mark Black ("Black"), the President and Chief Executive Officer ("CEO") of Origin, extended an offer of employment to Glanvill, where she would hold the position of President of Origin Consulting, LLC. Her official start date would be March 5, 2012. A copy of her Offer Letter is attached as Exhibit A.

**Answer**: Admitted.

15. Glanvill signed and accepted the terms of employment. Pursuant to the Offer Letter, Glanvill would receive an annual salary of $165,000, paid to her on a bi-weekly basis. Exhibit A.

**Answer**: Admitted.

16. For the first year of her employment, Glanvill was guaranteed a $10,000 quarterly bonus, paid to her at the beginning of the following quarter. Thereafter, for the following year, she would negotiate a performance-based bonus plan with Black.

**Answer**: Admitted.

17. In addition, to be eligible for a bonus payment upon separation of her employment, Glanvill understood and agreed that she had to be employed through the end of the quarter for which her bonus was being considered, and remain actively employed on the date of bonus payout. See Exhibit A.

**Answer**: Denied.

18. In or around November 2013, Glanvill decided to relocate her family from St. Louis, Missouri, to Chicago, Illinois. To that end, Glanvill sought a cash advance loan from Origin to assist in the down payment on a new home.

**Answer**: Defendant admits that her family relocated from St. Louis to Chicago. Defendant denies the remaining allegations contained in Paragraph 18.

4

19. On or around November 3, 2013, Black agreed to the loan and advanced the money to Glanvill. Black communicated the arrangement for the cash advance, stating he "offered to advance [Glanvill] her bonus for several quarters to assist in the cash required up front," needed for her to purchase a new home, with Mike Roddie ("Roddie"), the Chief Operations Officer of Origin, and Stacey Carver ("Carver"), the Director of Human Resources and Operations, to help coordinate the effort. A copy of the e-mail correspondence is attached as Exhibit B.

**Answer**: Defendant admits that on or about November 3, 2013, Black agreed to advance Glanvill her bonus for several quarters to assist in the cash required up front needed for the purchase of her new home. Defendant further admits that Black communicated the arrangement for the cash advance with Mike Roddie and Stacey Carver. Defendant denies the remaining allegations contained in Paragraph 19.

20. On November 12, 2013, Glanvill communicated with both Carver and Roddie regarding the specific amount needed—$90,000—and the necessary documentation she could provide to the bank advising the money was placed in her account. The subject of the email communications with Carver and Roddie was "Cash Advance." Exhibit B.

**Answer**: Defendant admits that on November 12, 2013, she communicated via email with Carver and Roddie regarding the specific amount needed and the necessary documentation she would need to provide to the bank. Defendant denies the remaining allegations contained in Paragraph 20.

21. Concerned about taxes on the amount of the loan, Glanvill asked Carver to increase the original loan amount of $90,000, to $93,000, so she could "clear the $90k at least" after taxes. See Exhibit B.

**Answer**: Defendant admits that, due to taxes, she asked to increase the amount to $93,000.00 so she could clear the $90K at least. Defendant denies the remaining allegations contained in Paragraph 21.

22. Due to the nature of the large cash infusion into her personal accounts and a pending mortgage loan, Glanvill and Origin agreed that the loan would be referred to as an "advance" against her upcoming bonus payouts. At all relevant times, Glanvill understood and agreed that the $93,000.00 was a personal loan that she would have to pay back to Origin.

**Answer**: Denied.

23. On December 2, 2013, Origin wired the $93,000.00 loan into Glanvill's personal account so that she could use it for a down payment for purchase of a new home.

**Answer**: Defendant admits that in December 2, 2013, Origin Consulting, LLC wired an advance of her bonus for several quarters into her personal account so that she could use it for a down payment for purchase of a new home. Defendant denies that Origin Consulting, LLC and Origin Holdings, Inc., wired $93,000.00. Defendant denies the remaining allegations contained in Paragraph 23.

24. Upon information and belief, also sometime in late 2013, Glanvill and her husband Peter Glanvill purchased the rights to run a Chick-fil-A franchise, located at 9600 Ridgeland Avenue, in Chicago Ridge, Illinois. 60415. Upon information and belief, to become an owner and "Operator" of a Chick-fil-A franchise, requires an initial cash investment of approximately $130,000.00.

**Answer**: Glanvill objects to Paragraph 24 on the grounds that the information sought is irrelevant to the instant dispute among the parties. Further answering and without waiving the objection, Glanvill admits that in August of 2013 her husband Peter Glanvill purchased the rights to run a Chick-fil-A franchise located at 9600 Ridgeland Avenue in Chicago, Illinois. Glanvill denies the remaining allegations contained in Paragraph 24.

25. On February 6, 2014, Black emailed Glanvill a chart summarizing her 2013 executive payout and compensation, with projections for a $73,000.00 bonus in 2014. At the end of the chart, was a line item for the "Personal Advance" in the amount of $93,000.00. See Exhibit C.

**Answer**: Admitted.

26. On that same day, Glanvill responded to Black stating, "I feel extremely blessed to be working for someone like you. You are extremely generous, supportive, and just a great boss." See Exhibit C.

**Answer**: Admitted.

27. On February 7, 2014, Black requested that Glanvill "decide the initial payback scheme for the [cash] advance…knowing that it can be adjusted if need be." See Exhibit C.

**Answer**: Admitted.

28. Four days later, Glanvill asked Black if it would be acceptable for her to pay back the loan amount of $93,000.00 over five (5) quarters, the first payment in 2013 and then the remainder in 2014. Black agreed to this proposed plan and confirmed that Glanvill would receive a Q4 2013 bonus for $53,000, instead of $73,000, with the deduction of the $20,000 going towards the repayment of the loan. Glanvill agreed. See Exhibit C.

**Answer**: Defendant admits she asked Black if it would be acceptable for her pay back her bonus advance over five (5) quarters, the first payment in 2013 and the remainder in 2014. Defendant further admits that Black agreed to this proposed plan and confirmed that Glanvill would receive a Q4 2013 bonus for $53,000. Defendant denies the remaining allegations in Paragraph 28.

29. By March 17, 2014, Glanvill corresponded with Roddie and Carver regarding her 2013 W-2 and stated that the "$92k (sic) was a loan and should not have been recorded as income," and accordingly, an adjustment needed to be made to her W-2. See Exhibit D.

**Answer**: Defendant admits that on March 17, 2014, she corresponded with Roddie and Carver regarding her 2013 W2 and stated that she believed the "92k was a loan and should not have been recorded as income – I believe." Defendant denies the remaining allegations in Paragraph 29.

30. The $93,000.00 personal advance was recorded as income and as a result, Glanvill owed taxes on the loan amount. As a solution, Black again offered to advance Glanvill an additional $40,000.00 to pay the taxes on the loan. Origin had contributed $1,348.50 as a result of the loan, making the total loan $94,348.50. See Exhibit E.

**Answer**: Defendant admits that the personal advance of her bonus was recorded as income and that, as a result, she owed taxes on the amount. Defendant admits that Black offered to advance her an additional $40,000 of her expected bonus to pay taxes. Defendant denies the remaining allegations contained in Paragraph 30.

31. On April 11, 2014, Origin wired an additional $40,000.00 into Glanvill's personal account to pay for the taxes owed on the original loan amount.

**Answer**: Defendant admits that Origin wired an additional $40,000.00 into her personal account to pay taxes. Defendant denies the remaining allegations contained in Paragraph 31.

32. Accordingly, as of May 1, 2014, the total debt Glanvill owed to Origin was $134,348.50.

**Answer**: Denied.

33. Glanvill made varying payments on the loan to Origin between May 2014 and June 2016, and neglected to adhere to her original plan to pay over five (5) quarters, ending in 2014. The total amount that Glanvill repaid to Origin was $58,540.80. See Payment Schedule, Exhibit E.

**Answer**: Defendant admits that the total amount she repaid to Origin on the advance of her bonus was $58,540.80. Defendant denies the remaining allegations contained in Paragraph 33.

34. On or around November 3, 2016, Glanvill resigned from Origin Consulting, LLC, to be effective November 11, 2016.

**Answer**: Admitted.

35. At that time, Black summarized the terms of Glanvill's termination, including "Payment of Outstanding Company Loan," for which he demanded payment in full. See Letter, Exhibit F.

**Answer**: Denied.

36. As of November 11, 2016, Glanvill owed a balance of $75,807.70 to Origin.

**Answer**: Denied.

37. On November 21, 2016, counsel for Origin sent a demand letter to Glanvill demanding repayment of the original loan.

**Answer**: Defendant admits that counsel on November 21, 2016, counsel for Origin sent her a demand letter demanding payment. Defendant denies the remaining allegations contained in Paragraph 21.

38. As of the date of the filing of this Amended Complaint, Glanvill has refused to repay the balance of $75,807.70 to Origin that she owes on the loan.

**Answer**: Denied.

39. On or around December 3, 2016, Glanvill began employment with TMG Consulting as Executive Vice President, to lead the firm's client-side delivery support practice, CSD Support™.

**Answer**: Admitted.

### COUNT I - BREACH OF CONTRACT

40. Origin restates and realleges Paragraphs 1 through 39 as though fully set forth herein.

**Answer**: Defendant restates and realleges her answers to Paragraphs 1 through 39 as though fully set forth herein.

41. The agreement between Origin and Glanvill, for Glanvill to repay the personal cash advances made to her in the amounts of $93,000.00 and $40,000.00, is a valid and enforceable contract.

**Answer**: Denied.

42. Origin fully performed its obligations under the agreement with Glanvill.

**Answer**: Denied.

43. Glanvill's partial repayment of $58,540.80 of the total loan demonstrates that, at all times, she knew and understood the personal cash advance was a loan requiring her repayment.

**Answer**: Denied.

44. Upon termination of her employment with Origin in November 2016, Glanvill failed and refused to repay the remaining balance of the loan in the amount of $75,807.70 to Origin.

**Answer**: Denied.

45. Glanvill's failure and refusal to repay the balance of her loan to Origin is a material breach of her agreement with Origin.

**Answer**: Denied.

46. As a result of Glanvill's breach of her agreement, Origin has been injured.

9

**Answer**: Denied.

WHEREFORE, Defendant, Pamela Glanvill, respectfully requests this Court dismiss Count I with prejudice and for such other relief as the Court deems just and necessary.

### COUNT II - UNJUST ENRICHMENT
### (In the Alternative)

47. Origin restates, realleges and incorporates by reference Paragraphs 1-39, as though fully set forth herein.

**Answer**: Defendant restates and realleges her answers to Paragraphs 1 through 39 as though fully set forth herein.

48. In the alternative to Count I, even if there is no enforceable contractual obligation by Glanvill to repay the balance of her personal loan to Origin, Origin is entitled to recover the money from Glanvill under the equitable doctrine of unjust enrichment.

**Answer**: Denied.

49. Glanvill received a benefit from Origin, specifically in the form of a personal loan amount in excess of $134,000, for which she owes Origin a balance of $75,807.70.

**Answer**: Denied.

50. Origin's payment and Glanvill's refusal to reimburse Origin for the balance of $75,807.70, has been to the detriment of Origin.

**Answer**: Denied.

51. Glanvill has been unjustly enriched in the amount of at least $75,807.70, by virtue of her failure to repay the balance of her personal loan because she did not earn the money. Such retention of the balance of the loan, without repayment, violates fundamental principles of justice, equity, and good conscience.

**Answer**: Denied.

WHEREFORE, Defendant, Pamela Glanvill, respectfully requests this Court dismiss Count II with prejudice and for such other relief as the Court deems just and necessary.

## DEFENDANT'S AFFIRMATIVE DEFENSES

Defendant Pamela Glanvill ("Glanvill") by and through her attorneys, Patterson Law Firm, LLC, for her Affirmative Defenses to Plaintiffs' First Amended Complaint states as follows:

## FIRST AFFIRMATIVE DEFENSE

## UNENFORCEABLE AGREEMENT

1. The purported loan agreement between Plaintiffs and Defendant had no maturity date, interest, or repayment terms.

2. Consequently, the loan agreement is unenforceable because it lacks material terms.

## SECOND AFFIRMATIVE DEFENSE

## SET OFF

1. On March 5, 2012, Mark L. Black ("Black"), the Founder and CEO of Origin Consulting hired Glanvill as President of Origin Consulting.

2. Pursuant to her offer of employment letter, Glanvill would receive an annual base salary of $165,000.00. Additionally, during the first year of employment, Origin Consulting guaranteed Glanvill a $10,000.00 quarterly bonus, paid to her at the beginning of the following quarter. Within six months of the first year of employment, Black and Glanvill would formulate a performance-based quarterly bonus.

3. On or about November of 2013, pursuant to Glanvill's offer of employment letter, Black and Glanvill reformulated Glanvill's bonus. Black and Glanvill agreed she would receive a quarterly bonus payment comprised of five percent of the profit generated by Origin Consulting per quarter.

4. Origin Consulting initially performed under the terms of the parties' agreement. Glanvill received quarterly performance-based bonuses comprised of five percent of the revenue generated by Origin Consulting in 2014, 2015, and in the first quarter of 2016.

6. Origin Consulting ceased performance under the agreement when Glanvill announced her intent to resign from the company. Since then, Origin has withheld bonus payments for the second and third quarters of 2016, during which Glanvill was employed by Origin Consulting.

7. As of the date of the filing of this Affirmative Defense, Origin Consulting has refused to pay Glanvill her earned bonus for the second and third quarters of 2016, in the amount of at least $63,873.33.

8. As a direct and proximate result of Origin Consulting, LLC's failure to pay Glanvill's bonus, Glanvill has lost wages and bonuses for work performed.

9. Accordingly, any amounts allegedly owed to Plaintiffs are set-off by amounts due and owing to Glanvill as alleged in Glanvill's Counterclaims.

## THIRD AFFIRMATIVE DEFENSE

## LACK OF STANDING

1. Origin Holdings, Inc. is not a party to the alleged agreement between Origin Consulting, LLC and Glanvill.

2. Glanvill was employed by Origin Consulting, LLC.

3. In November of 2013, Glanvill sought a cash advance of her quarterly performance-based bonus from Origin Consulting, LLC to assist in the down payment on a new home.

4. On or about November 3, 2013, Mark Black offered to advance Glanvill her employment bonus for several quarters to assist in the cash required for the down payment.

5. Origin Consulting, LLC wired the cash advance to Glanvill's account.

6. Origin Consulting, LLC took out withholding and taxes prior to advancing the funds to Glanvill.

7. Accordingly, any obligation that Glanvill may have to repay the cash advance is to Origin Consulting, LLC and not Origin Holdings, Inc.

8. Therefore, Origin Holdings, Inc. lacks standing to bring Count I for breach of contract and Count II for unjust enrichment against Glanvill.

## FOURTH AFFIRMATIVE DEFENSE

## UNCLEAN HANDS

1. Plaintiffs' claims of wrongdoing by Glanvill are overshadowed by their own wrongful, dishonest, and unauthorized, acts, including, but not limited to Origin Consulting, LLC's withholding of Glanvill's bonus payment for the second and third quarters of 2016 and failure to pay Glanvill wages and bonuses for work performed.

2. Plaintiffs' claims and/or damages sought are thus barred by the doctrine of unclean hands.

WHEREFORE, Defendant, Pamela Glanvill, respectfully requests this Court enter judgment in her favor on her Affirmative Defenses, for such other relief as the Court deems just and necessary.

Respectfully submitted,

Dated: August 18, 2017

/s/Stephanie Simpson
Jefferey O. Katz
Michael Haeberle
Stephanie Simpson
Patterson Law Firm, LLC
One North LaSalle St., Suite 2100
Chicago, IL 60602
jkatz@pattersonlawfirm.com
mhaeberle@pattersonlawfirm.com
ssimpson-mathless@pattersonlawfirm.com
Tel. 312-223-1699
Fax. 312-223-8549
Firm I.D.: 45052
Attorneys for Defendant