**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Origin Holdings, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17-cv-02031 |
| | ) | |
| v. | ) | District Judge Thomas M. Durkin |
| | ) | |
| Pamela Glanvill, | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Notice of E-Filing**

To:  Noah Finkel
     Robyn Marsh
     Seyfarth Shaw, LLP
     233 S. Wacker, Suite 8000
     Chicago, IL 60606

PLEASE TAKE NOTICE that on **August 18, 2017**, the undersigned caused the attached **Defendant's Counterclaim** to be electronically filed via the Clerk of the Court using CM/ECF system.

Respectfully submitted,
/s/Stephanie Simpson
Jefferey O. Katz
Michael Haeberle
Stephanie Simpson
Patterson Law Firm, LLC
One North LaSalle St., Suite 2100
Chicago, IL 60602
jkatz@pattersonlawfirm.com
mhaeberle@pattersonlawfirm.com
ssimpson-mathless@pattersonlawfirm.com
Tel. 312-223-1699
Fax. 312-223-8549
Firm I.D.: 45052
Attorneys for Defendant

**Proof of Service**

The undersigned, an attorney, certifies that on August 18, 2017, a copy of the **Defendant's Counterclaim** was filed electronically with the Clerk of the Court using CM/ECF system. The parties may access this filing through the Court's electronic filing system, and notice of this filing will be send to the following parties by operation of the Court's electronic filing system.

Noah Finkel
Robyn Marsh
Seyfarth Shaw, LLP
233 S. Wacker, Suite 8000
Chicago, IL 60606

/s/ Stephanie Simpson
Stephanie Simpson

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Origin Holdings, Inc. and<br>Origin Consulting, LLC, | ) <br> ) <br> ) |
| Plaintiff, | ) Case No. 1:17-cv-02031 <br> ) |
| v. | ) Dist. Judge Thomas M. Durkin <br> ) |
| Pamela Glanvill, | ) Magistrate Judge Susan E. Cox <br> ) |
| Defendant. | ) <br> ) |
| Pamela Glanvill | ) <br> ) |
| Counter-Plaintiff, | ) <br> ) |
| v.<br>Origin Holdings, Inc. and<br>Origin Consulting, LLC, | ) <br> ) <br> ) <br> ) |
| Counter-Defendants. | ) <br> ) |

**COUNTERCLAIMS**

Defendant and Counter-Plaintiff, Aletha Pamela Glanvill, by and

through her attorneys, Patterson Law Firm, LLC, for her counterclaims

against Plaintiffs and Counter-Defendants Origin Holdings, Inc. and

Origin Consulting, LLC, alleges as follows:

**Nature of the Action**

1.      This case arises out of Plaintiff and Counter-Defendant Origin

Consulting, LLC's failure to pay Defendant and Counter-Plaintiff, Aletha

Pamela Glanvill ("Ms. Glanvill"), her employment bonus.  Ms. Glanvill

served as President of Origin Consulting, LLC from March 5, 2012 until

1

her voluntary resignation on November 11, 2016.  Pursuant to the terms
of her employment, Ms. Glanvill was entitled to a quarterly bonus
payment.  While Origin Consulting paid Ms. Glanvill's earned bonuses for
the initial four-and-a-half years of her employment, when Ms. Glanvill
announced her intent to resign from the company, it refused to pay her
earned bonus.  Origin Consulting's wrongful withholding of Ms. Glanvill's
earned bonus violates the Illinois Wage Payment and Collection Act and
the terms of Ms. Glanvill's employment.  Ms. Glanvill now brings this
action seeks to recover her bonus and the attorneys' fees incurred in
filing this action.

**The Parties**

2.      Aletha Pamela Glanvill is a resident of the State of Illinois.
Ms. Glanvill is an information technology professional, with over thirty
years of experience guiding and implementing critical applications with a
specific focus on the utility and revenue verticals.  Ms. Glanvill was
employed as President of Origin Consulting, LLC from March 5, 2012
through her resignation on November 11, 2016.

3.      Origin Holdings, Inc. is a corporation organized and existing
under the laws of the State of Nevada, with its principal place of business
in Las Vegas, Nevada.

4.      Origin Consulting, LLC ("Origin Consulting" or "the LLC") is a
wholly-owned subsidiary of Origin Holdings, Inc., and organized with the
State of Nevada as a series limited liability company.  Origin Consulting

2

is comprised of two members, Mark L. Black and Tamara Wilson-Black, both residents of Las Vegas, Nevada. Origin Consulting provides professional consulting services to the Energy and Utilities Industry.

**General Allegations**

5.     On March 5, 2012, Mark L. Black ("Black"), the Founder and CEO of Origin Consulting hired Ms. Glanvill as President of Origin Consulting, a role previously held by Black. Exhibit A.

6.     As President of Origin Consulting, Ms. Glanvill was responsible for the day-to-day operations of the LLC. Ms. Glanvill worked directly with Black and the management team, growing the consulting revenue and driving a number of strategic objectives.

7.     Pursuant to her offer of employment letter, Ms. Glanvill would receive an annual base salary of $165,000.00. *Id.* Additionally, during the first year of employment, Origin Consulting guaranteed Ms. Glanvill a $10,000.00 quarterly bonus, paid to her at the beginning of the following quarter. *Id.* Within six months of the first year of Ms. Glanvill's employment, Black and Ms. Glanvill would formulate a quarterly bonus based on the company's performance. *Id.*[1]

8.     On March 13, 2013, Black notified the employees of Origin Consulting that they would all receive bonuses for the fourth quarter of

---

[1] At Origin Consulting, the first quarter of the fiscal year ("Q1") spans December through March; the second quarter ("Q2") spans March through June; the third quarter ("Q3") spans June through September; and the fourth quarter ("Q4") spans September through December of each year.

2012. Black informed his employees that "Origin [had] never withheld bonus payouts" for their employees. Exhibit B.

9. On or about November of 2013, Black and Ms. Glanvill reformulated Ms. Glanvill's bonus. Black and Ms. Glanvill agreed she would receive a quarterly bonus payment comprised of five percent of Origin Consulting's profit for a given quarter, to be paid to her at the beginning of the following quarter.[2] Exhibit C.

10. During her tenure as President of Origin Consulting, the LLC met and exceeded its objectives, the company performed well, and Ms. Glanvill received quarterly bonuses.

11. As a result, on November 23, 2014, Black notified Ms. Glanvill that her annual base salary would increase $210,000.00. Exhibit D. Black stated that the salary increase was "the result of [Ms. Glanvill's] continuous contribution to the success of this company." *Id.*

12. In 2014, Origin Consulting paid Ms. Glanvill quarterly bonus payments in the total amount of $135,423.29.

13. In 2015, Origin Consulting paid Ms. Glanvill quarterly bonus payments in the total amount of $153,861.32.

---

[2] Although Ms. Glanvill's offer of employment letter provided that Black and Ms. Glanvill would formulate a quarterly bonus based on the company's performance within six months of the first year of Ms. Glanvill's employment (Exhibit A), Black did not reformulate Ms. Glanvill's bonus until November of 2013.

14.    On December 11, 2015, Black again informed the employees of Origin Consulting that "Origin [had] never withheld bonus payouts" for their employees.  Exhibit E.

15.    On or about October 26, 2016, Ms. Glanvill submitted her resignation as President of Origin Consulting, effective November 11, 2016.

16.    On or about November 1, 2016, Ms. Glanvill contacted Black and Stacey Carver ("Carver"), the Director of Human Resources, to inquire as to her bonus pay out for the second and third quarters of 2016.  Exhibit F.

17.    Ms. Glanvill had already received her bonus pay for the first quarter of 2016.[3]

18.    Black informed Ms. Glanvill she would not receive a bonus. Black stated, "as with every employee, these bonus [sic] are annual. They are not quarterly." Exhibit G.  Black further stated, "[g]iven our current cash position, we have not scheduled the payout." *Id.*

19.    This was the first time Black mentioned to Ms. Glanvill that he believed the bonus payments were annual. Moreover, Ms. Glanvill had been paid quarterly bonuses with Black's approval during the preceding

---

[3] In 2016, Origin Consulting's first quarter ("Q1") spanned December 20, 2015 through March 19, 2016; the second quarter ("Q2") spanned March 20, 2016 through June 18, 2016; the third quarter ("Q3") spanned June 19, 2016 through September 17, 2016; and the fourth quarter ("Q4") spanned September 18, 2016 through December 17, 2016.

four years of employment at Origin Consulting, including a bonus of $5,836.21 for the for the first quarter of 2016.

20.     Based on Origin Consulting's profit for the second quarter of 2016, Ms. Glanvill should have been paid $43,873.33 in bonus compensation.[4]  Exhibit H.

21.     Pursuant to the terms of Ms. Glanvill's employment, her bonus for the second quarter of 2016, which spanned March 20, 2016 through June 18, 2016, should have been paid to her at the beginning of the following quarter, in July of 2016.

22.     Based on Origin Consulting's profit for the third quarter of 2016, Ms. Glanvill should have been paid at least $20,000.00 in bonus compensation.

23.     Pursuant to the terms of Ms. Glanvill's employment, her bonus for the third quarter of 2016, which spanned June 19, 2016 through September 15, 2016, should have been paid to her at the beginning of the following quarter, in October of 2016.

24.     While Black claimed that bonus payments for the second and third quarters of 2016 were not scheduled for payout "[g]iven [Origin's] current cash position" (Exhibit G) other employees of Origin Consulting received bonus payments for the second and third quarters of 2016.

---

[4] This figure is comprised of the $49,709.54 combined bonus Ms. Glanvill should have received for Q1 and Q2 of 2016, minus the $5.836.21 she was paid for Q1 of 2016.

25.     As of the date of the filing of these Counterclaims, Origin

Consulting has refused to pay Ms. Glanvill her earned bonus for the

second and third quarters of 2016, in the amount of at least $63,873.33.

**Count I: Claim for wages under the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et. seq.*) against Origin Consulting, LLC**

26.     Ms. Glanvill restates paragraphs 1 - 25 as though fully

stated herein.

27.     Ms. Glanvill was an employee of Origin Consulting under the

Illinois the Illinois Wage Payment and Collection Act ("Wage Act").

28.     Ms. Glanvill was entitled to receive quarterly bonus

payments comprised of five percent of the profit generated by Origin

Consulting per quarter.

29.     The bonus payments constitute final compensation under

the Wage Act, which defines final compensation as "wages, salaries,

earned commissions, earned bonuses, and the monetary equivalent of

earned vacation and earned holidays, and any other compensation owed

the employee by the employer pursuant to an employment contract[.]"

820 ILCS 115/2.

30.     Under the Wage Act, Origin Consulting was required to pay

Ms. Glanvill's final compensation "at the time of separation, if possible,

but in no case later than the next regularly scheduled payday[.] 820 ILCS

115/5.

31.     When Ms. Glanvill announced her intent to resign from the company in the fourth quarter of 2016, Origin Consulting refused to pay Ms. Glanvill's earned bonus for the second and third quarters of 2016.

32.     As of the date of the filing of these Counterclaims, Origin Consulting has refused to pay Ms. Glanvill her earned bonus for the second and third quarters of 2016, in the amount of at least $63,873.33.

33.     Ms. Glanvill now seeks payment of her earned bonuses pursuant to the Wage Act.

WHEREFORE, Defendant and Counter-Plaintiff, Pamela Glanvill, respectfully requests that the Court enter judgment in her favor and against Origin Consulting, LLC, in an amount to be determined at trial, plus statutory interest and penalties; all attorney's fees and costs incurred by Defendant and Counter-Plaintiff in connection with this claim against Origin Consulting, LLC; and for such other relief as the Court deems just and appropriate.

**Count II: Breach of Contract against Origin Consulting, LLC**

34.     Glanvill restates paragraphs 1 - 25 as though fully stated herein.

35.     The agreement between Origin Consulting and Ms. Glanvill for Ms. Glanvill's bonus is a valid and enforceable contract, pursuant to which Ms. Glanvill was entitled to a bonus payment comprised of five percent of the profit generated by Origin Consulting each quarter.

8

36.     Origin Consulting initially performed under the terms of the parties' agreement.  Following the first year of her employment, Ms. Glanvill received quarterly performance-based bonuses comprised of five percent of the profit generated by Origin Consulting for every quarter of 2014 and 2015 and for the first quarter of 2016.

37.     Pursuant to the parties' agreement, Origin Consulting should have paid Ms. Glanvill's Q2 bonus in July of 2016 and Q3 bonus in October of 2016.

38.     However, Origin Consulting ceased performance under the agreement when Ms. Glanvill announced her intent to resign from the company.  Since then, Origin Consulting has wrongfully withheld Ms. Glanvill's bonus payments for the second and third quarters of 2016.

39.     Ms. Glanvill has performed her obligations under the agreement with Origin Consulting.

40.     As of the date of the filing of these Counterclaims, Origin Consulting has refused to pay Ms. Glanvill her earned bonus for the second and third quarters of 2016, in the amount of at least $63,873.33.

41.     As a direct and proximate result of Origin Consulting's breach of the agreement, Ms. Glanvill has been injured by lost wages for work performed.

WHEREFORE, Defendant and Counter-Plaintiff, Pamela Glanvill, respectfully requests that the Court enter judgment in her favor and against Origin Consulting, LLC, in an amount to be determined at trial,

plus prejudgment interest; any other applicable interest costs and fees; and for and for such other relief as the Court deems just and appropriate.

**Count III: Piercing Origin Consulting, LLC's corporate veil against Origin Holdings, Inc.**

42.     Glanvill restates paragraphs 1 - 25 as though fully stated herein.

43.     Origin Holdings, Inc. is an alter ego of Origin Consulting, LLC, and is therefore liable to Ms. Glanvill for the bonus payments due to her.

44.     There is a unity of interest and ownership between Origin Consulting, LLC and Origin Holdings, Inc., such that their separate personalities do not exist.  Adherence to the fiction of Origin Holdings, Inc's separate corporate existence would, under the circumstances, promote a substantial injustice.

45.     Among the factors support the piercing of Origin Consulting, LLC,'s corporate veil and the imposition of liability against Origin Holdings, Inc., are the following: (a) Origin Consulting, LLC failed to follow corporate formalities, such as the holding of regular board meetings; (b) undercapitalization of Origin Consulting, LLC; (c) the failure to maintain arms-length relationships among related entities, specifically Origin Consulting, LLC and Origin Holdings, Inc.

WHEREFORE, Defendant and Counter-Plaintiff, Pamela Glanvill, respectfully requests that the Court enter judgment in her favor and

10

against Origin Holdings, Inc. in an amount to be determined at trial, plus prejudgment interest; any other applicable interest costs and fees; and for and for such other relief as the Court deems just and appropriate.

Respectfully submitted,

Dated: August 18, 2017

/s/Stephanie Simpson
Jefferey O. Katz (6283209)
Michael Haeberle (6309164)
Stephanie Simpson (6307015)
Patterson Law Firm, LLC
One North LaSalle St., Suite 2100
Chicago, IL 60602
jkatz@pattersonlawfirm.com
mhaeberle@pattersonlawfirm.com
ssimpson-mathless@pattersonlawfirm.com
Tel. 312-223-1699
Fax. 312-223-8549
Firm I.D.: 45052
Attorneys for Defendant

11

January 17, 2012

Pamela Glanvill
1501 Misty Valley Ct
Wildwood, MO 63038

Dear Pam,

This letter is my formal offer to you to become President of Origin Consulting, LLC. We have talked about the possibility; I think we have aligned our thoughts regarding the opportunity and how this arrangement will be mutually beneficial. Much of what is in this letter has been outlined in our conversations, but I want to formalize the discussions, as a confirmation of my seriousness and willingness to see what we envisioned become a component of our future. If you agree, your first day with Origin will be March 5, 2012.

As a well known leader in our niche industry, Origin seeks your business acumen to help us strengthen our consulting practice – in terms of sustainability in a dynamic market, quality service delivery, and growth in revenue and client accounts.

For this participation, Origin has packaged an offer that contains the following components.

**EXHIBIT
A**

**Base Salary**   As President of Origin Consulting, LLC, you will receive a annual salary of $165,000 which will paid to you bi-weekly in amounts of $6,346.15 per pay period.

**Insurance & Retirement** – Origin is providing a package of benefits to each of our employees that equals that of much larger companies *[refer to Attachment A]*.  Origin will pay 100% of these benefits for you and your family, excepting Short and Long Term Disability and Voluntary Life/AD&D.  Employees pay the premiums on disability benefits so that benefits are tax-free to you, in the event of your becoming disabled.  Origin will gross up your salary to the amount of your deduction plus applicable taxes so that in effect Origin will pay 100% of your premium. This allows for disability premiums to be paid by the employee but at no cost to the employee.  This will maintain the benefit pay out as a tax free benefit. Voluntary Life/AD&D benefits are 100% employee paid.

Origin offers the following for employees and their dependents.

(a)   Origin uses the HealthEquity to avoid tying the HSA Account to the Medical Insurance provider.
(b)   Origin does not contribute to 401K at this time; however, employees have access to this plan for self-contributions if desired.

**Cash bonus compensation** – Within 6 months of your first year of employment, you and I will formulate your performance-based bonus plan for year two of your employment.  For year 1, Origin will guarantee to you a $10,000 quarterly bonus, paid to you at the beginning of the following quarter, throughout your first year.

If you are hired after the beginning of a quarter, any bonus due to you will be prorated provided your employment continues through the end of the same quarter.  To be eligible for bonus payout upon separation, you must work through the end of the quarter for which bonus is being considered and remain actively employed on the date of bonus payout.

2

**Equity** – Please refer to Attachment A for the details of your equity plan. While this plan affords you an opportunity to earn equity in Origin, Inc., it does not hold you liable for any debt or liabilities incurred by Origin, Inc., as a result of this ownership.

**Paid Leave** – Origin wants all employees to achieve a balance between their professional responsibilities, their personal health and well-being, and their relationships with family. To foster a culture that supports these beliefs, Origin provides the following paid leave.

During your first calendar year of employment, the amount of Paid Leave you accrue will be prorated based on the length of time you are employed with Origin during that year.

As a new hire, you will be eligible to accrue paid leave on your 91st day of employment and may start to utilize the benefit after the initial 90 days of employment. Any emergency situations should be discussed with your manager directly.

As with all life situations, there are special circumstances. Origin will address special circumstances, if they arise, with each employee separately. When special circumstances arise, it is possible that the 20-day allotment of paid leave is not sufficient to achieve a 'balance in life,' Origin will take measures to accommodate the employee's needs. Given the nature of our consulting work, Origin encourages flexibility and pre-approval for leave.

**Tools of the Trade** - During your employment, you can expect Origin to provide you with all of the tools that you need to successfully execute your duties. These tools include a laptop computer and associated software, a mobile phone, and reimbursement of monthly cell phone service fees.

**Employment At Will Policy** - By accepting this offer, you understand that you are not hired for any definite or specified period of time even though your wages are paid regularly. You are an at-will employee of the Company and your employment can be terminated at any time, with or without cause and with or without prior notice. Company policy requires all employees to be hired at-will and this policy cannot be changed except by a written document signed by you and an Officer of the Company. There have been no implied or verbal agreements or promises to you that you will be discharged only under certain circumstances or after certain procedures are followed. There is no implied employment contract created by this Offer Letter or any other Company document or written or verbal statement or policy.

I appreciate your interest in Origin and for the opportunity to extend this offer.

3

Warmest regards,


Mark L. Block
President / CEO
Origin, Inc.


Accepted by:


Pamela Gianvill

Attachment A
Equity Plan – Pamela Glanvill

|  |  |  |  |  |
|---|---|---|---|---|
| Start | 0 | 0 | 0 | 0 |
| 2013 Anniversary | 25,000 |  | 35% | 12/31/2012 |
| 2014 Anniversary | 25,000 | 25,000 | 35% | 12/31/2013 |
| 2015 Anniversary | 25,000 | 25,000 | 35% | 12/31/2014 |
| 2016 Anniversary | 25,000 | 25,000 | 35% | 12/31/2015 |
| 2017 Anniversary |  | 25,000 | 35% | 12/31/2016 |
|  |  |  |  |  |
| Total | 100,000 | 100,000 |  |  |

Terms and Conditions

1. Ownership occurs in Origin, Inc.
2. There is no difference between shares in primary vs. secondary, other than vesting schedule.
3. Share Price is set by: [(1 * Annual Revenue)/ Number of Shares]
4. Vesting Price is determined by: [Share Price – (Share Price * Discount)]
5. Mid year Stock Valuations are determined by the last 12 months of revenue
6. To retain rights to this plan and its proceeds, you must remain a full-time employee of Origin Consulting, LLC or any of its affiliated companies.
7. This Equity Plan is subject to a performance option for an additional 200,000 shares. The terms and conditions of this performance option are to be determined on your second anniversary of employment.

5

**From:** Mark Black <mblack@originconsults.com>
**Date:** Wednesday, March 13, 2013 11:00 AM
**To:** Employees - All <EmployeesAll@originconsults.com>
**Subject:** Upcoming Bonus Payouts

Hi everyone,

It is about that time when Origin will begin to pay out bonus's from the 4th quarter of 2012.  The numbers are getting bigger and bigger, which only means that each of you are working your buns off.

In reflection, I am particularly proud of the fact that Origin has never withheld bonus payouts for our team.  We have always managed to issue the checks that our team deserves.  I think this is a testament to our abilities, as well as our desire to remain aligned with the principles that 'You take out what you put in'.  I am very proud of this historical factoidŠ it means a lot to me personally that we strive to meet our promises.

I am really thrilled with the operation of our small companies these days.  We are doing super things and progressing daily.

It would be unfortunate if each of you are not feeling that you are part of something that is emergingŠ if you are missing something in this context, please feel free to call me at any time to check in and say 'hi, what the hell is going on that makes you feel so good?'.

Peace.. And have a great day.  I am going for my morning run.

Mark

**EXHIBIT
B**

Redacted

---

**From:** Pam Glanvill <pglanvill@originconsults.com>
**Date:** Saturday, November 9, 2013 at 4:44 AM
**To:** "Mark L. Black" <mblack@originincorporated.com>
**Subject:** Re: You mentioned a possible loan

Hi Mark,

How about this:

My bonus is 5% of 'Origin Consulting Income – Origin Consulting (excluding Pam's previous bonus for that year)' - See attached.

If we land up coming up with something like this, would I be paid for the shortfalll from Q1 and Q2?

And lastly, does COJ possibly not paying this invoice impact you ability to extend the loan to me

Best Regards,

Pam
<D5F7E495-F354-4747-AA20-5F3D3452A843[646].png>
Pamela Glanvill   |   President   |   973.727.8732   |   originconsults.com

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to which they are addressed.

Redacted

**EXHIBIT
C**

Redacted

Redacted

Redacted

Redacted

Redacted

**From:** "Mark L. Black" <mblack@originincorporated.com>
**Date:** Sunday, November 23, 2014 at 8:52 AM
**To:** Pam Glanvill <pglanvill@originconsults.com>
**Subject:** 2014 Increase

Pam,

I would like to inform you that your salary has been increased by $210,000.00 starting fromMM/DD/YYYY. Your new annual salary will be $210,000.00. This increase is the result of your continuous contribution to the success of this company. I recognize your efforts and would like to reward you for that. I am fortunate to have someone like you in our team. Congratulations and best of luck in the future.

**EXHIBIT
D**

Now the special part....

Behind your back, I rave about you.  Behind your back, I am thankful.  Behind your back, I am delighted to see you flourish in your role in Origin.  You are shining, Pam.  You are climbing the side of the mountain to the top.  You are following your instincts and it is paying off.  You needed this opportunity to grow and you are taking full advantage of it.  I could not be happier that I have you at my side, that the team has you as their leader, and that our clients have you looking out for their best interests.

Peace!  Enjoy the rewards!  Enjoy the song of labor… (yea, I said that.. pretty corny, eh?)

Best regards,


Mark L. Black    |    Founder & CEO    |    404-725-0080


This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to which they are addressed.

Redacted

**Re: Take a moment please - Payout of Banked Bonus's**

Pam Glanvill

Sent: Friday, December 11, 2015 at 12:26 PM
To: Mark L. Black;  Employees - US Consulting

This message is high priority.

**From:** "Mark L. Black" <mblack@originincorporated.com>
**Date:** Friday, December 11, 2015 at 9:37 AM
**To:** Employees - Origin Consulting <EmployeesOrigin@originconsults.com>
**Subject:** Take a moment please - Payout of Banked Bonus's

Hi everyone,

We have a moment here and I want to take it.

Since Origin began, Origin has never missed a bonus payout.  Since 2008, when the company brought on its first employees, we have set expectations and met them for paying out earned bonus's.  It delights me that the Company has never failed in this regard.

In reflection, I get the chance to repeat myself — this metric is a testament to your efforts to maintain a high standard of performance.  It is that simple.

As you hit the ground every day and continue to progress the Company down a path of successful accomplishment, Origin will continue to reward your efforts.

Stop now!  Take your right hand and reach over your left shoulder.  Pat yourself!  In that, there is a huge thank you from me for a job well done.

Mark

**EXHIBIT E**

Redacted

On Nov 1, 2016, at 12:50 PM, Pam Glanvill <pglanvill@originconsults.com> wrote:

Hi Stacey and Mark,

Please can you confirm the bonus amounts for Q2 and Q3. Many thanks

Best Regards,
Pam
<17995409-1C0C-429A-8B66-6FCE7BEEDC09[53].png>
Pamela Glanvill | President | 973.727.8732 | originconsults.com

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to
which they are addressed.

Redacted

**EXHIBIT
F**

Redacted

**Date:** Tuesday, November 1, 2016 at 11:58:39 AM Central Daylight Time

**From:** Mark L. Black

**To:** Pam Glanvill

**CC:** Stacey Carver

Pam,

As with every employee, these bonus are annual. They are not quarterly. The condition of quarterly payout is that you are employed when they are paid.

Given our current cash position, we have not scheduled the payout.

Mark

Running mobile 🚗 🚲 🚡 🚇

**EXHIBIT
G**

|  | | EMPLOYEE DATA | | | | | | | | BONUS PAYOUTS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | LAST | FIRST | DIRECTOR | DOH | SALARY | PER PERIOD | EQUITY(Y/N) | BENEFITS (Y/N) | IMMIGRATION | 2014 | 2015 | 2016 (YTD) |
| **Executive & Administrative** | SEFFENS | JESSICA | CARVER | 02/18/13 | $62,000 | $ 2,384.62 | N | MD | N | $ 3,000.00 | $ - | $ - |
| | RODDIE | GERALDINE | BLACK | 04/01/15 | $91,520 | $ 3,520.00 | N | MDV | N | $ - | $ - | $ - |
| | CARVER | STACEY | BLACK | 02/01/11 | $110,000 | $ 4,230.77 | Y | MDV | N | $ 9,500.00 | $ - | $ - |
| | BLACK | MARK | TAMARA | 11/01/06 | $400,000 | $ 15,384.62 | Y | MDV | N | $ - | $ - | $ - |
| | GLANVILL | ALETHA P | BLACK | 03/05/12 | $210,000 | $ 8,076.92 | Y | MDV | N | 135,423.30 | 153,861.13 | $ 49,709.54 |
| | SHIRLEY | SCOTT | GLANVILL | 09/29/14 | $200,000 | $ 7,692.31 | N | MDV | N | $ - | $ 92,316.68 | $ 29,925.45 |
| | TBD | | GLANVILL | | $90,000 | $ 3,461.54 | | | | | | |
| | TBD | | GLANVILL | | $60,000 | $ 2,307.69 | | | | | | |
| | | | | | $1,223,520 | | | | | | | |
| **Leadership** | ANDREWS | JAMES | GLANVILL | 04/21/08 | $192,394 | $ 7,399.76 | Y | MDV | N | $ 38,156.40 | $ 32,500.00 | $ 15,000.00 |
| | GAFFEN | ALLAN M | GLANVILL | 06/25/12 | $171,840 | $ 6,609.23 | Y | MDV | N | $ 18,300.51 | $ 24,246.23 | $ 12,875.44 |
| | BUTLER | PAUL | SHIRLEY | 10/12/15 | $198,900 | $ 7,650.00 | N | N | N | $ - | $ 1,875.00 | $ 9,769.58 |
| | LABOR | COREY | SHIRLEY | 05/12/14 | $132,000 | $ 5,076.92 | N | N | N | $ 9,600.01 | $ 12,000.00 | $ 7,781.55 |
| | WILLIAMS | KENNETH L | GLANVILL | 05/26/14 | $182,700 | $ 7,026.92 | Y | MDV | N | $ 10,584.52 | $ 22,884.06 | $ 11,148.75 |
| | THOMAS | ROBERT | SHIRLEY | 05/16/16 | $176,000 | $ 6,769.23 | N | DV | N | $ 12,682.57 | $ - | $ 1,523.08 |
| | | | | | $1,053,834 | | | | | | | |
| **Consulting Professionals** | BENTON | BRIAN J | THOMAS | 10/22/12 | $127,995 | $ 4,922.89 | Y | MDV | N | $ 12,248.61 | $ 12,799.51 | $ 3,199.88 |
| | BEST | ERIK M | LABOR | 05/28/12 | $169,197 | $ 6,507.57 | Y | MDV | N | $ 15,330.69 | $ 17,474.12 | $ 8,526.24 |
| | BRAND | ANDRIES | THOMAS | 06/30/08 | $168,447 | $ 6,478.72 | Y | MDV | N | $ 23,096.63 | $ (233.88) | $ 9,181.94 |
| | DANDAL | SHEILA | THOMAS | 04/11/16 | $162,000 | $ 6,230.77 | N | MDV | N | $ - | $ - | $ 3,115.38 |
| | FISHER | CYNTHIA | MAGTOTO | 12/01/13 | $170,321 | $ 6,550.80 | Y | MDV | N | $ 21,016.15 | $ 19,843.20 | $ 8,292.74 |
| | FRANCISCO | KRISTOFFER | BUTLER | 11/13/12 | $103,042 | $ 3,963.16 | N | MDV | Y | $ 11,593.95 | $ 13,068.78 | $ 5,038.97 |
| | GARRIDO | IKE | MAGTOTO | 08/05/13 | $164,934 | $ 6,343.62 | Y | N | N | $ 20,116.25 | $ 16,170.00 | $ 11,341.71 |
| | ISBRANDTSEN | KELLEY | LABOR | 04/21/14 | $157,500 | $ 6,057.69 | Y | MDV | N | $ 7,849.04 | $ 13,500.00 | $ 9,044.97 |
| | JAIN | MADJUR | BUTLER | 10/21/13 | $154,344 | $ 5,936.32 | N | MDV | Y | $ 18,639.18 | $ 20,042.89 | $ 10,475.22 |
| | KING | RUBEN | LABOR | 07/03/15 | $100,913 | $ 3,881.25 | N | MD | Y | $ - | $ 5,131.74 | $ 5,381.23 |
| | LIU | MANDY | THOMAS | 11/30/15 | $73,000 | $ 2,807.69 | N | MDV | Y | $ - | $ 403.85 | $ 3,632.69 |
| | MAGTOTO | DANTE | SHIRLEY | 12/01/14 | $169,125 | $ 6,504.81 | N | MDV | N | $ 951.92 | $ 23,100.00 | $ 8,270.56 |
| | MIRPURI | SHAWN E | LABOR | 10/22/12 | $138,580 | $ 5,330.00 | Y | MDV | N | $ 15,660.00 | $ 10,816.00 | $ 6,776.84 |
| | ROIG | FRANCO | THOMAS | 04/01/16 | $85,000 | $ 3,269.23 | N | MDV | Y | $ 761.05 | $ 911.66 | $ 3,400.00 |
| | SAATSAZ | SAMAN | THOMAS | 07/07/14 | $141,625 | $ 5,447.12 | N | MDV | N | $ 7,615.38 | $ 15,125.00 | $ 6,925.74 |
| | SIMMONS | BRUCE | WILLIAMS | 01/18/16 | $142,000 | $ 5,461.54 | N | MDV | N | $ - | $ - | $ 600.76 |
| | SOLLENBERGER | MANDY | MAGTOTO | 11/04/13 | $128,310 | $ 4,935.00 | Y | MDV | N | $ 14,110.85 | $ 17,108.00 | $ 6,333.25 |
| | TAN | ROBERTO | BUTLER | 10/15/12 | $134,550 | $ 5,175.00 | N | MDV | Y | $ 11,484.62 | $ 13,000.00 | $ 6,579.76 |

**EXHIBIT H**